Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7968 | **DATE** | 6/18/2002 |
| **CASE TITLE** | Dobner vs. Health Care Service Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the foregoing reasons, the Court GRANTS Defendant's Motion to dismiss Count II, Count III and Count IV of Plaintiff's Complaint and GRANTS Defendant's Motion to Strike Plaintiff's jury demand. (9-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 19 2002 | |
| | Notified counsel by telephone. | | date docketed | 14 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| TP | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
JUN 1 9 2002

| | |
|---|---|
| WENDY JOAN DOBNER, individually and on Behalf of all others similarly situated, ) ) ) ) Plaintiff, ) ) v. ) ) Health Care Service Corporation, a Mutual ) Legal Reserve Company d/b/a BLUE ) CROSS AND BLUE SHIELD OF ) ILLINOIS, ) ) Defendants. ) | Judge Guzman<br><br>NO: 01 C 7968 |

## MEMORANDUM OPINION AND ORDER

This case involves a request for the reimbursement of the cost of a wig needed for hair loss related to chemotherapy. The Health Care Service Corporation d/b/a Blue Cross and Blue Shield of Illinois, ("BC/BS") denied Plaintiff's request for reimbursement. Wendy Joan Dobner has sued BC/BS, a Mutual Legal Reserve Company, and Blue Cross and Blue Shield of Illinois for violating the Employee Retirement Income Security Act ("ERISA") (Count I), breach of contract for health insurance (Count II), violating the Illinois Consumer Fraud and Deceptive Trade Practices Act (Count III), and violating the Illinois Insurance Code (Count IV). Plaintiff also seeks a declaratory judgment that her health care benefit policies provide coverage for wigs (Count V).

Defendants have moved to dismiss the Plaintiff's Complaint (Counts II-IV) for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6). Plaintiff, concedes that ERISA preempts Count II of the Complaint (breach of contract).

1

Therefore, this Memorandum Opinion and Order will focus on whether Counts III and IV are preempted by ERISA. For the reasons provided in this Memorandum Opinion and Order, defendants' motion is GRANTED.

## FACTS

BC/BS insures Plaintiff under a group policy of health insurance through Plaintiff's employer, Kemper Insurance Company. (Compl. ¶ 1.) BC/BS is in the business of providing and administering health insurance, for a fee, to consumers pursuant to the terms and conditions of insurance policies written and issued by it. (*Id.* ¶ 8.) BC/BS underwrites and administers policies of health insurance that provide coverage for prosthetic devices and special appliances for an illness or injury when such devices and/or appliances are required to replace all or part of an organ or tissue of the human body, or when such devices and/or appliances are required to replace all or part of the function of a non-functioning or malfunctioning organ or tissue. (*Id.* ¶ 10.)

On January 29, 2001, Plaintiff Dobner was diagnosed with a form of breast cancer known as multi-focal infiltrating lobular carcinoma. (*Id.* ¶ 17.) Dobner's physician recommended that she undergo a double mastectomy, which she did. (*Id.*) Dobner then underwent reconstructive surgery and was ordered to undergo six months of chemotherapy treatment. (*Id.*) Her oncologist prescribed a cranial prosthesis for chemotherapy-induced alopecia for Dobner. (*Id.* ¶ 18.)

On February 5, 2001, Dobner called the "Customer Service" telephone number located on the back of her BC/BS insurance card to make a claim for the cranial prosthesis. (*Id.*) An agent of BC/BS, denied Dobner's claim for a cranial prosthesis, citing policy documents that she had never been provided. (*Id.*) On February 15, 2001,

2

Dobner, through her attorney, contested the claim of denial and on March 13, 2001, BS/BC again denied the claim. (*Id.* ¶ 19.)

## DISCUSSION

Under the Supremacy Clause of the U.S. Constitution (Article VI, clause 2), federal legislation overrides state legislation when both deal with the same subject matter. Under Section 1144 of ERISA, state law claims that "relate to" an employee benefit plan governed by ERISA are preempted by ERISA, unless the state law regulates insurance, banking, or securities. 29 U.S.C.S. §§1144(a), 1144(b)(2)(A).

### A. Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act") (Count III)

The Consumer Fraud Act, prohibits unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretenses, false promise, misrepresentation or the concealment, suppression or omission of such material fact. 815 ILCS 505/1, et seq.

Plaintiff alleges that BC/BS violated the Act by willfully denying claims that it knew it was obligated to cover. (Compl. ¶ 50.) More specifically, Plaintiff alleges that BC/BS misrepresents to consumers the criteria under which prostheses will be approved for coverage and characterizes the cranial prostheses as not medically necessary when BC/BS knows that the prostheses is medically necessary for the health and well-being of the insured. (*Id.* ¶¶ 52, 53.) Defendant argues that Count III should be dismissed because ERISA preempts claims under the Consumer Fraud Act that relate to an employee benefit plan.

3

In ERISA, Congress set out to:

> "protect...participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts."

§ 2, as set forth in 29 U.S.C. § 1001(b). Congress capped off the undertaking of ERISA with provisions relating to the preemptive effect of the federal legislation:

> "Except as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...nothing in this title shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."

29 U.S.C. §§ 1144(a), 1144(b)(2)(A).

Thus, all state laws are superceded if they "relate to an employee benefit plan." The Supreme Court has stated that this clause must be broadly construed to preempt state laws beyond those "specifically designed to affect employee benefit plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 98 (1983). Courts, therefore, have found that ERISA preempts common law claims that "relate to" employee benefit plans. See, e.g., *Authier v. Ginsberg,* 757 F.2d 796, 800 (6th Cir. 1985); *Helms v. Monsanto Co.,* 728 F.2d 1416, 1420 (11th Cir. 1984); *Russell v. Massachusetts Mutual Life Ins. Co.,* 722 F.2d 482, 487 (9th Cir. 1983).

In order to see whether the Consumer Fraud Act claim is preempted by ERISA, the court must analyze whether (1) the claim "relates to" their employee benefit plan, and (2) whether the Consumer Fraud Act claim is saved by the fact that it regulates insurance. *DeBruyne v. Equitable Life Assurance Society,* 920 F.2d 457, 468 (7th Cir. 1990).

4

The Supreme Court has held that a state law "relates to" an employee benefit plan when it (1) has a connection with or (2) has a reference to such a plan. *California Div. Of Labor Standards Enforcement v. Dillingham,* 519 U.S. 316, 324 (1997). "The phrase 'relate to' [is] given its broad common-sense meaning, such that a state law 'relates to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 85 L. Ed. 2d 728, 105 S. Ct. 2380 (1985) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 77 L. Ed. 2d 490, 103 S. Ct. 2890 (1983)).

## I. Whether the Consumer Fraud Act "relates to" an ERISA plan

The Consumer Fraud Act does not make an explicit reference to ERISA plans. Therefore, the question is whether Plaintiff's Consumer Fraud Act claim has any connection with an ERISA plan. The Consumer Fraud Act claim is connected to Plaintiff's ERISA plan.

The Seventh Circuit Court has clearly stated that, "an effort to control the information provided to employees choosing benefits provided by an employer's plan is squarely within the preemption clause. A claim that the literature distributed as part of a plan's administration is incorrect, or that employees were fraudulently induced to pick one option under a plan rather than another, lies comfortably within the zone of exclusive federal control." *Anderson v. Humana, Inc.,* 24 F.3d 889, 891 (7th Cir. 1994). Anderson in that case wanted employers to provide different or additional information to their employees. *Id.* The court stated that such a claim would at a minimum, require some change in summary plan descriptions of the welfare benefit plans themselves. So preemption is straightforward. *Id.*

5

Plaintiff alleged that defendant violated the Consumer Fraud Act by misrepresenting to consumers the criteria under which the consumers can receive benefits under the health insurance policy, misrepresenting the criteria under which prostheses will be approved for coverage, and for characterizing cranial prostheses as not medically necessary. (Compl. ¶¶ 51, 52, 53.) Plaintiff alleges that her claim is distinguishable from *Anderson*. She argues that *Anderson* involved a claim to change the actual language of the plan whereas her claim does not. The Court agrees with the Defendant that such a distinction is illusory. Plaintiff's claim may not involve changing the terms of the plan, but at the very least, it involves interpreting the benefits provided under the ERISA plan to see if there was any deceptive practice of denying Plaintiff the benefits she alleges she is entitled to. Therefore, it is clear that Plaintiff's Consumer Fraud Act claim has a connection to the ERISA plan, and therefore "relates to" her ERISA plan.

## II. Whether the Consumer Fraud Act Claim "Regulates Insurance"

The only way Plaintiff's Consumer Fraud Act claim can survive, is if it falls within the "saving clause" contained in ERISA. All state claims are superceded by ERISA, unless the law involved "regulates insurance." 29 U.S.C. 1144(b)(2)(A). Plaintiff's Consumer Fraud Act claim does not "regulate insurance."

The Supreme Court in determining whether a state law falls under the saving clause, stated that, "first, we took what guidance was available from a "common-sense view" of the language of the saving clause itself. Second, we made use of the case law interpreting the phrase "business of insurance" under the *McCarran-Ferguson* Act, 15 U. S. C. § 1011 *et seq.*, in interpreting the saving clause. *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 48 (1987). Three criteria have been used to determine whether a

6

practice falls under the "business of insurance" for purposes of the *McCarran-Ferguson Act*: "*First*, whether the practice has the effect of transferring or spreading a policyholder's risk; *second*, whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third*, whether the practice is limited to entities within the insurance industry." *Union Labor Life Ins. Co. v Peirno*, 458 U.S. 119, 129 (1982).

The Supreme Court further states that "a common-sense view of the word "regulates" would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry." *Id.* at 49. The Consumer Fraud Act regulates the misconduct of businesses, including insurance companies. However, the Act is not specifically directed toward the insurance industry. Therefore, Plaintiff's claim does not survive the common-sense test.

Moreover, Plaintiff's claim does not survive the *McCarran-Ferguson* test. The court held that the Consumer Fraud Act, which is "a set of general business norms does not regulate insurance within the meaning of ERISA." *Anderson v. Humana, Inc.*, 24 F.3d 889, 892 (7th Cir. 1994). The Illinois Consumer Fraud and Deceptive Business Practice Act does not "regulate insurance" under the common sense or *McCarran-Ferguson* test. For these reasons, Defendant's motion to dismiss Count III under the Illinois Consumer Fraud and Deceptive Business Practice Act is GRANTED.

### B. Plaintiff's Bad Faith Claim Under the Illinois Insurance Code (Count IV)

Plaintiff alleges that the denial of coverage by BC/BS was in bad faith in that

7

BC/BS knew or should have known that cranial prostheses should be covered under the language of the policies between BC/BS and Plaintiff but nevertheless denied such coverage. (Compl. ¶ 62.) Defendant argues that Plaintiff's claims under Section 155 are preempted by ERISA.

### I. Whether Plaintiff's Bad Faith Claim "relates to" the ERISA Plan

There is no explicit reference to the ERISA plan under Section 155, however there is a connection to the ERISA plan. As stated above, in order to find a violation under Section 155, the Court would have to interpret the terms of the Plaintiff's ERISA plan. Therefore it is clear that Plaintiff's Bad Faith claim "relates to" an ERISA plan.

### II. Whether Plaintiff's Bad Faith Claim "regulates insurance"

Plaintiff's claim also does not survive the *McCarran-Ferguson* test. ERISA preempts state law claims under Section 155 of the Illinois Insurance Code. *See also Gawarsh v. CAN Ins. Co.*, 978 F. Supp. 790, 793-94 (N.D. Ill. 1997); *Iseda v. John Alden Life Ins. Co.*, 1992 WL 91944 at *3-4 (N.D. Ill. 1992); *Summers v. United States Tobacco Co.*, 214 Ill. App. 3d 878, 887 (1st Dist. 1991). The *Buehler* court found that the Illinois Insurance Code satisfied the third prong of the *McCarran-Ferguson* test, by appearing to regulate insurance since it was limited to entities in the insurance industry, however, it failed to satisfy the remaining *McCarran-Ferguson* factors, since it doest not regulate the substantive content of insurance contracts." *Buehler Ltd. V. Home Life Ins. Co.*, 722 F. Supp. 1554, 1556 (N.D. Ill. 1989). The court explained that "Section 155 does not transfer or spread the policy holder's risk...Nor is it an integral part of the insured/insurer relationship, since it does not govern the substantive content of the

8

insurance contract, but merely regulates the procedural aspects of claims processing by providing certain remedies in the event of vexatious insurance practices. Thus, since Section 155 does not survive the *McCarran-Ferguson* test, it is not saved from preemption under ERISA." *Id.* Furthermore the court held that plaintiff's "exclusive cause of action to recover benefits under the ERISA-governed plan is provided by section 1132(a) of ERISA. *Id.* at 1562.

Because Section 155 does not substantively govern the content of the insurance contract under the *McCarran-Ferguson* test, it does not "regulate insurance" and therefore is preempted by ERISA. For these reasons, Defendant's motion to dismiss Count IV of Plaintiff's claim under Section 155 is GRANTED.

C. BC/BS has also moved to strike Plaintiff's request for a trial by jury. We agree with BC/BS. See *Mathews v. Sears Pension Plan*, 144 F.3d 461, 468 (7th Cir 525 U.S. 1054 (1998) *cert. denied*, 525 U.S. 1054 (1998).

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion to dismiss Count II, Count III and Count IV of Plaintiff's Complaint and GRANTS Defendant's Motion to Strike Plaintiff's jury demand.

**SO ORDERED**  **ENTERED:**

HON. RONALD A. GUZMAN
United States Judge